IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

PATRICIA REED                                          PLAINTIFF


VS.                           CIVIL ACTION NO. 3:16-cv-51-WHB-JCG


MADISON COUNTY, MISSISSIPPI                            DEFENDANT

## OPINION AND ORDER

This cause is before the Court on the Motion of Defendant for Summary Judgment.  Having considered the pleadings, the attachments thereto, as well as supporting and opposing authorities, the Court finds the Motion is well taken and should be granted.


### I.  Factual Background and Procedural History

In February of 2012, Patricia Reed, an African-American, was hired as a correctional officer in the booking department of the Madison County Detention Center ("Detention Center"), which is operated by Madison County, Mississippi ("Madison County").  Prior to being hired, Reed was interviewed and recommended for hire by Lieutenant Mary Brown ("Brown") and Master Sergeant Andria Crater ("Crater").   Major Chuck McNeal ("McNeal"), who was responsible for day-to-day operations at the Detention Center, made the decision to hire Reed. In 2014, Reed was promoted to the position of corporal, a decision that was again made by McNeal.

Reed was disciplined several times during the course of her employment. In April of 2013, Reed was issued a verbal warning

based on her having failed to properly check fingerprint returns. In March of 2014, Reed was issued a written warning for failing to properly follow inmate release procedures.  In October of 2014, Reed received a 2-day suspension for sleeping on the job.

In September of 2015, Reed was issued another 2-day suspension based on her having discussed jail and personal business while in the presence of an inmate and other officers.  This suspension was predicated on a conversation Reed had with one of her subordinate officers, Correctional Officer Sierra Morton ("Morton"), who was allegedly having an affair with Reed's niece's husband, Correctional Officer Marquez Lacy ("Lacy").  Reed, because she suspected that Morton knew beforehand that she (Reed) was going to be suspended, sent Morton the following text message:

> U know what I find mighty strange that the morning [C]rater called me to come up there any other time the first thing u would have done is b nosy call me asking me what did she say what's going on I was wondering y u was hanging over and another thing I c y u had to work up n til Wednesday I put 2 and 2 together u played slick and called me later on like aint shit happen asking me what I'm doing with that fake shit u knew what was going on but want to play krazy that's why I don't fuck with to many females 2 dam messy it might take me a while to c sooner than later behind every flowers may lay a snake I've never thought u would have turn into the person u are I can remember when u said they wouldn't hire u and I'm not about that drama Ima b off to myself it's just like u said one night u love that shit u caught up all n it from all three shifts but hey Ima let you have that I'm too grown for the bullshit I ain't got NO MORE conversation for u and I would appreciate if it's not work related please don't call or text my phone.dont think for one second I'm down and out I'm GOOD but best believe BOO yo day coming Real soon GOD Don't like ugly[1]

---

[1]  See Mot. for Sum. J. [Docket No. 35], Ex. H.

Morton showed Reed's text message to Master Sergeant Crater, who in turn discussed the matter with Lieutenant Brown.  After conferring, Brown and Crater recommended that Reed by terminated, and Major McNeal accepted that recommendation.  Reed was terminated by McNeal on September 21, 2016.

On or about September 29, 2016, Reed filed a Charge of Discrimination with the EEOC alleging that she had been discriminated on the basis of her race, i.e. African-American. Following receipt of her Right-to-Sue Notice from the EEOC, Reed filed a Complaint in this Court alleging that she had been discriminated against in violation of Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e, and 42 U.S.C. § 1981.[2] Madison County has now moved for summary judgment on Reed's claims.

## II.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

[2]  As Reed has alleged claims arising under federal law, the Court may properly exercise federal subject matter jurisdiction in this case pursuant to 28 U.S.C. § 1331.
Reed's Complaint also named the Madison County Board of Supervisors and the Madison County Sheriff's Department as defendants to this action.  The Board and Sheriff's Office have been dismissed.  <u>See</u> Stipulation of Dismissal [Docket No. 18].

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. Id. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980).  Summary judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial.  National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).

## III.  Discussion

Under Title VII, it is "an unlawful employment action for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2 (a)(1).  Similarly, 42 U.S.C. § 1981 protects individuals from race-based discrimination. See e.g. Adams v. McDougall, 695 F.2d 104, 108 (5th Cir. 1983) ("Section 1981 refers to racial discrimination in the making and enforcement of contracts and is designed to include a federal remedy against discrimination in employment on the basis of race.").  Madison County has moved for summary judgment on Reed's

race discrimination claims arguing there is no evidence that it had intentionally discriminated against her on that basis. In response, Reeds argues that there are questions of material fact with respect to whether her termination was racially motivated so as to preclude summary judgment on her claims.

A plaintiff may prove racial discrimination using either direct or circumstantial evidence. See e.g. Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003). Here, because there is no direct evidence of discrimination, Reed's claim is analyzed under the burden-shifting framework used in circumstantial evidence cases. Additionally, in cases involving "mixed motives", the Court applies the "modified McDonnell Douglas approach" set forth by the United States Court of Appeals for the Fifth Circuit in Rachid v. Jack In The Box, Inc., 376 F.3d 305 (5th Cir. 2004). Under this approach:

> [t]he plaintiff must ... demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive[s] alternative). If a plaintiff demonstrates that [race] was a motivating factor in the employment decision, it then falls to the defendant to prove "that the same adverse employment decision would have been made regardless of discriminatory animus. If the employer fails to carry this burden, plaintiff prevails.

Id. at 312-13 (internal citations omitted).

To establish a prima facie case of wrongful termination under either Title VII or Section 1981[3], Reed must show she was: (1) a member of a protected group; (2) qualified for the position; (3) suffered some adverse employment action; and (4) was treated less favorably than a similarly situated employee outside the protected class or was terminated because of a protected characteristic. See Rutherford v. Harris Cty., Tex., 197 F.3d 173, 179 (5th Cir. 1999). Here, the record shows that Reed is black and, therefore, in a protected class; she was qualified for the position of corporal as evidenced by her having been promoted to that position; she was terminated from that position; and a white officer, Kristen Boyd ("Boyd"), was promoted to the corporal position following Reed's termination. As the burden of establishing a prima facie case of discrimination is not onerous, see Texas Dept. of Cmt'y Affairs v. Burdine, 450 U.S. 248, 253 (1981), and as Madison County has conceded that there is sufficient evidence in the record to support each element of Reed's prima facie case of wrongful termination, the Court finds Reed has satisfied her burden of stating a prima facie case of race-based discrimination/wrongful termination under Title VII and Section 1981. See Mem. in Supp. of Mot. for Sum. J. [Docket No. 35], 6 ("Madison County does not dispute that Reed is

---

[3] "Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII." LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 n.2 (5th Cir. 1996).

able to hurdle the 'low bar' required for establishing a prima facie case.").

As Reed has made a prima facie showing of race-based discrimination/wrongful termination, the burden now shifts to Madison County, which must articulate a legitimate, non-discriminatory reason for her termination. On this issue, Madison County contends that Reed was terminated based on her history of disciplinary problems and the subsequent "final straw" that was the perceived threatening/harassing text message she sent to a subordinate officer. See Mem. in Supp. of Mot. for Sum. J. [Docket No. 35], 7 ("Over the course of her employment, Reed repeatedly was disciplined for admitted bad behavior, including violating detention center rules and sleeping on the job. The final straw came when Reed sent a profanity-laced text message to her own subordinate employee, which called the employee a 'snake', said that she [(Reed)] was 'too grown for [the subordinate's] bullshit[,]' and told the subordinate that she 'best believe [her] day [was] coming] [r]eal soon[.]"). The disciplinary measures cited by Madison County include (1) a verbal warning in April of 2013, that was based on Reed's having failed to properly check fingerprint returns; (2) a written warning in March of 2014, that was based on Reed's failing to properly follow inmate release procedures; (3) a 2-day suspension in October of 2014, that was based on Reed's sleeping on the job; and (4) a 2-day suspension in

September of 2015, that was based on Reed's discussing jail and personal business in the presence of inmates and other officers. See Mot. for Sum. J. [Docket No. 34], Exs. D-G, respectively.

Courts have found that a history of disciplinary actions and workplace rule/regulation infractions can constitute a legitimate, non-discriminatory reason for termination. See e.g. Vaughan v. Woodforest Bank, 665 F.3d 632, 636 (5th Cir. 2011)(finding that an employer that had terminated an employee because of "unsatisfactory conduct", which included the making "innappropriate comments in the presence of employees", had articulated a legitimate, non-discriminatory reason for termination); Givs v. City of Eunice, 512 F. Supp. 2d 522, 538 (W.D. La. 2007)(finding that the plaintiff's having been subject to repeated disciplinary actions over the course of his employment was a legitimate, non-discriminatory reason for his termination); Daniels v. Texas Dept. of Transp., 2016 WL 7188836, at *14 (E.D. Tex. Dec. 10, 2016)(finding an employer had stated a legitimate, non-discriminatory reason for termination in a case in which the termination was predicated on the plaintiff's disciplinary history)(citing Ward v. Midwestern State Univ., 217 F. App'x 325, 328 (5th Cir. 2007)).  Courts have also found that verbally threatening and verbally abusing or harassing co-employees is likewise a legitimate, non-discriminatory reason for termination.  See e.g. Pineda v. United Parcel Serv., Inc., 360 F.3d 483, 489 (5th Cir. 2004)(finding the employer had

9

stated a legitimate, non-discriminatory reason for termination in a case in which the plaintiff had been terminated following his having threatened several of his co-employees); Taylor v. Seton Brackenridge Hosp., 349 F. App'x 874, 877 (5th Cir. 2009)(employer had articulated a legitimate, non-discriminatory reason for terminating plaintiff in a case in which he had verbally harassed a co-worker and used expletives when addressing and referring to her); Blanks v. Cmty. Hosp. of Brazosport, 2015 WL 769728, at *5 (S.D. Tex. Feb. 23, 2015)(finding that harassing and threatening behavior toward another employee is a legitimate, non-discriminatory reason for termination)(citing Taylor, 349 F. App'x at 877 (verbal harassment by an employee constitutes a legitimate, non-discriminatory reason for the termination); Jackson v. Blockbuster, Inc., 2010 WL 2268086, at *6 (E.D. Tex. June 4, 2010)(finding an employer had a legitimate, non-discriminatory reason for terminating employee where he threatened another employee)); Moore v. Christus St. Elizabeth's Hosp., 2011 WL 1533462, at *5 (E.D. Tex. Mar. 9, 2011)(employee's having made threats and threats of violence against co-employees constituted legitimated, non-discriminatory reason for termination). Under the cited authorities, the Court finds Madison County has articulated a legitimate, non-discriminatory reason for terminating Reed's employment, namely her history of disciplinary actions and her having sent an allegedly harassing/threatening text message to her

subordinate officer.

Under the modified McDonnell Douglas approach, the burden now shifts back to Reed who must show that the reasons articulated by Madison County for her termination were not true, but were instead a pretext for discrimination (pretext theory); or that the articulated reasons, while true, were only one of the reasons for her termination and another "motivating factor" was her race (mixed motive theory).

As regards this burden, Reed first argues that she can show pretext/mixed motive because she was not interviewed "to get her side of the story" before Madison County made the decision to terminate her employment. Here, the record shows that the decision to terminate Reed was made based on her history of disciplinary problems and after she sent the profanity-laced text message to one of her subordinate officers. The evidence in the record also shows that Madison County and the subordinate employee perceived the message that Reed sent to be a threat. See e.g. Mot. for Sum. J., Ex. L at 4. Reed does not deny that she sent the subject text message, but avers that it was not intended as a threat. See Resp. [Docket No. 37], Ex. B, at ¶ 7.

Although Reed argues that Madison County did not give her an opportunity to present her side of the story with respect to the subject text message before terminating her employment, a deficient or improper investigation, or an investigation that reaches an

11

erroneous conclusion "does not establish a discriminatory motive." Wedlock v. Ace Cash Express, Inc., 589 F. App'x 707, 709 (5th Cir. 2014). See also Bryant v. Compass Grp. USA Inc., 413 F.3d 471, 478 (5th Cir. 2005)("[E]vidence that the employer's investigation merely came to an incorrect conclusion does not establish a racial motivation behind an adverse employment decision."); Stewart v. Treasure Bay Casino, 2015 WL 11112501, at *6 (S.D. Miss. Jan. 2015)(rejecting the plaintiff's claim that his employer's failure to interview him during the investigation it conducted was a pretext for discrimination); Jackson v. Blockbuster, Inc., 2010 WL 2268086, at *6 (E.D. Tex. June 4, 2010)("Although it may have been advisable for Blockbuster to investigate the veracity of the complaint by interviewing Jackson, the fact that Blockbuster did not interview Jackson does not establish pretext.")(citing Gallow v. Autozone, Inc., 952 F.Supp. 441, 448 n.6 (S.D. Tex. 1996)("[T]he failure to investigate (while possibly a poor business practice) does not establish that Defendant's proffered reason for terminating Plaintiff was a pretext for discrimination")). Accordingly, the Court finds the alleged deficient/improper investigation does not create a genuine issue of material fact with respect to the issues of pretext or mixed motive.

Next, Reed argues that she can show pretext because "no reasonable person could interpret the text message to include a clear threat of physical violence" against the subordinate officer.

Reed supports this argument by citing the decision of the Mississippi Department of Employment Security ("MDES"), in which the Administrative Law Judge concluded that the text message did not, in his opinion, contain a threat. See Resp., Ex. C. Courts, however, have not given decisions of the MDES preclusive effect. See e.g. Schuh v. Town of Plantersville, Miss., 2014 WL 4199271, at * 2-4, 9 (N.D. Miss. Aug. 2014)(finding that the decision of the MDES did not have preclusive effect in a later-filed employment discrimination case, in part, because of the differing burdens of proof in the proceedings). Additionally, even if Madison County had made an erroneous decision with respect to whether the subject text message could be perceived as a threat, that erroneous decision would not create a fact issue regarding pretext because it would not show that that decision was made with a discriminatory motive. See e.g. Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995)("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").

Although not specifically raised as evidence of pretext or mixed motive, Reed also argues that there had a been an abrupt decline in her performance evaluation prior to her termination. On this issue, the record shows that on September 7, 2015, Reed was given a Performance Review in which she received an "excellent rating" in the areas of work quality, initiative, and

13

dependability; a "good rating" in the areas of job knowledge and communication; and a "satisfactory rating" in the area of attendance. Resp., Ex. A. Three days later, on September 10, 2015, Reed was issued her second 2-day suspension based on her failing to comply with established written policies, and engaging in behavior unbecoming of an officer. See Mot. for Sum. J., Ex. G. Then, on September 15, 2015, the day after the suspension was lifted, Reed sent the subject text message to her subordinate officer. In her Termination Report, which is dated September 21, 2015, Reed was given an "unsatisfactory rating" in all of the categories referenced above. Id., Ex. J. Although the record establishes a marked decline in Reed's employment evaluation, the record also establishes that the ratings decline immediately followed Reed's having been given a 2-day suspension and Reed's having sent the perceived threatening/harassing text message to her subordinate employee. Because of the intervening rule and policy infractions committed by Reed, the Court finds she has failed to show that the decrease in her employment evaluation was pretext for discrimination. See e.g. Martin v. Kroger Co., 65 F. Supp. 2d 516, 552 (S.D. Tex. 1999)(finding that evidence regarding the plaintiff's past acceptable employment performance had been "tainted" by her subsequent poor performance and negative attitude and, therefore, that the "evidence of [the plaintiff's] prior good performance [was] insufficient to show pretext in light of her more

recent performance problems.").

Having reviewed the pleadings, the Court finds Reed has failed to show that there exists a genuine issue of material fact with respect to whether the reasons articulated by Madison County for her termination, i.e. her history of disciplinary actions and her subsequent sending of the perceived threatening/harassing text message to her subordinate officer, are either false or that racial discrimination was actually the motivating factor in that employment decision.  In other words, Reed has not produced adequate evidence to either support a finding, or create a fact issue, of discriminatory animus on the part of Madison County. This finding is bolstered in this case by the fact that the same actors, i.e. Lieutenant Brown, Master Sergeant Crater, and Major Chuck McNealy (two of whom are also black), were responsible for both the recommending for hire and/or promotion and hiring Reed, and the recommending for termination and the termination of her employment. See Spears v. Patterson UTI Drilling Co., 337 F. App'x 416, 421-22 (5th Cir. 2009)(explaining that "[t]he same actor inference  creates a presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue.").  As Reed has not shown that there exists a genuine issue of material fact that her race caused or motivated her termination, the Motion of Madison County for Summary Judgment on her employment discrimination claims will

be granted.

## IV.  Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Defendant for Summary Judgment [Docket No. 34] is hereby granted.  A Final Judgment dismissing this case with prejudice will be entered this day.

SO ORDERED this the 9th day of May, 2017.


                              s/ William H. Barbour, Jr.
                              UNITED STATES DISTRICT JUDGE

16